Thomas L. Strickland (*appearing pro hac vice*)
thomas.strickland@wilmerhale.com
David W. Bowker (SBN 200516)
david.bowker@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Christopher T. Casamassima (SBN 211280)
chris.casamassima@wilmerhale.com
Alix Pisani (SBN 312263)
alix.pisani@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

*Attorneys for Plaintiff Vanguard Logistics Services (USA), Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| VANGUARD LOGISTICS SERVICES (USA), INC.<br><br>Plaintiff,<br><br>v.<br><br>FRASER ROBINSON AND BEACON TECHNOLOGIES, LTD.<br>Defendants. | Case No.: 2:20-cv-09880-JAK-PVC<br><br>**PLAINTIFF VANGUARD LOGISTICS SERVICES (USA), INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [ECF NO. 17]**<br><br>Date: May 3, 2021<br><br>Courtroom: 10A<br><br>Judge: Hon. John. A. Kronstadt |

## TABLE OF CONTENTS


INTRODUCTION ..... 1

SUMMARY OF ALLEGATIONS ..... 4

I. THE PARTIES ..... 4

- A. Vanguard ..... 4
- B. Beacon ..... 5
- C. Robinson ..... 5

II. DEFENDANTS' ROLE AT VANGUARD AND EXTENSIVE CONTACTS WITH CALIFORNIA ..... 6

LEGAL STANDARD ..... 9

ARGUMENT ..... 10

I. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ..... 11

- A. Defendants Purposefully Directed Their Conduct at California ..... 11
  - 1. Defendants Committed Intentional Acts ..... 13
  - 2. Defendants Expressly Aimed Their Conduct at Vanguard, Which Is Incorporated in California and Has Its Principal Place of Business in Long Beach ..... 14
  - 3. Defendants Knowingly Caused Harm in California ..... 16
- B. Vanguard's Claims Arise Out of Defendants' Forum-Related Actions ..... 17
- C. The Exercise of Jurisdiction Comports with Fair Play and Substantial Justice ..... 18

II. ALTERNATIVELY, JURISDICTIONAL DISCOVERY IS APPROPRIATE ..... 21

III. VENUE IS PROPER IN THIS COURT ..... 21

IV. *FORUM NON CONVENIENS* IS NOT A BASIS FOR DISMISSAL ..... 21

- A. The "Forum Selection Clause" Provides No Support ..... 22
- B. The Private Interest Factors Favor This District ..... 23
- C. The Public Interest Factors Favor This District ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*AirWair Int'l ltd. v. Schultz*,
73 F. Supp. 3d 1225 (N.D. Cal. 2014) .......... 20

*Am. W. Airlines, Inc. v. GPA Grp., Ltd.*,
877 F.2d 793 (9th Cir. 1989) .......... 21

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .......... 11, 12, 14, 16

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) .......... 17

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) .......... 10, 21

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010) .......... 11, 17

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*,
137 S. Ct. 1773 (2017) .......... 18

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*,
406 U.S. 706 (1972) .......... 21

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 12, 16

*Calder v. Jones*,
465 U.S. 783 (1984) .......... 12

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) .......... 22

*Carmel v. Mizuho Bank, Ltd.*,
2019 WL 10186488 (C.D. Cal. Nov. 14, 2019) .......... 20

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001) .......... 14

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) .................... 17

*Com Sys., Inc. v. Nahmad*,
924 F.2d 1062 (9th Cir. 1991) .................... 23

*Crorama, Inc. v. Dominguez*,
2020 WL 4919735 (C.D. Cal. July 6, 2020) .................... 10

*DEX Sys., Inc. v. Deutsche Post AG*,
727 Fed. Appx. 276 (9th Cir. 2018) .................... 15, 16

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) .................... *passim*

*Enertrode, Inc. v. Gen. Capacitor Co. Ltd.*,
2016 WL 7475611 (N.D. Cal. Dec. 29, 2016) .................... 15, 18, 19

*Fluke Electronics*,
2013 WL 566959 (W.D. Wash. Feb. 13, 2013) .................... 15

*Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*,
2013 12131744 (C.D. Cal. Aug. 13, 2013) .................... 10

*Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) .................... 22, 23

*HaloSongs, Inc. v. Sheeran*,
2017 WL 5198248 (C.D. Cal. Jan. 13, 2017) .................... 21

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) .................... 21

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
817 F.2d 75 (9th Cir.1987) .................... 23

*Language Line Servs., Inc. v. Language Servs. Assoc., LLC*,
2010 WL 5115671 (N.D. Cal. Dec. 9, 2010) .................... 11

*Laub v. U.S. Dep't of Interior*,
342 F.3d 1080 (9th Cir. 2003) .................... 21

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) .................... 21

*M/A-COM Tech. Solutions, Inc. v. Litrinium, Inc.*,
2019 WL 6655274 (C.D. Cal. Sept. 23, 2019) .......... 19

*MacDermid, Inc. v. Deiter*,
702 F.3d 725 (2d Cir. 2012) .......... 16

*Mavrix Photo, Inc. v. Brand Tecs., Inc.*,
647 1218 (9th Cir. 2011) .......... 12

*Mee Indus., Inc. v. Adamson*,
2018 WL 6136813 (C.D. Cal. Jul. 27, 2018) .......... 17

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) .......... 19

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) .......... 11

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) .......... 12, 16

*Ravelo Monegro v. Rosa*,
211 F.3d 509 (9th Cir. 2000) .......... 22

*Ross v. Abbott Vascular Inc.*,
2020 WL 4934487 (N.D. Cal. Apr. 6, 2020) .......... 21

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... *passim*

*Updateme Inc. v. Axel Springer SE*,
2017 WL 5665669 (N.D. Cal. Nov. 27, 2017) .......... 22

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013) .......... 17

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... *passim*

**Federal Statutes**

28 U.S.C. § 1391(c) .......... 21

**State Statutes**

Cal. Civ. Proc. Code § 410.10 .......... 11

## INTRODUCTION

Defendants' Motion to Dismiss (the "Motion") should be denied because this Court has personal jurisdiction over Fraser Robinson ("Robinson") and Beacon Technologies, Ltd. ("Beacon") and dismissal for *forum non conveniens* is unwarranted. The Motion should be denied for the additional reason that Robinson has knowingly misrepresented material facts in his sworn Declaration, in an improper and futile effort to evade this Court's jurisdiction.

This Court has personal jurisdiction over Defendants Robinson and Beacon because each has much more than the requisite "minimum contacts" with California, such that haling them in court here would comport with "fair play and substantial justice." Robinson, a U.S. citizen, joined the board of a California corporation, Plaintiff Vanguard Logistics Services (USA) Inc. ("Vanguard"), served as chairman of the board's digital steering committee, contracted to provide Vanguard with consulting and other advisory services, traveled to Vanguard's headquarters in Long Beach, met with Vanguard officers and directors in Long Beach, regularly emailed and telephoned Vanguard personnel in Long Beach, targeted and stole trade secrets and other confidential information from Vanguard, breached contractual and fiduciary duties he owed to Vanguard, and used the information he stole to establish a competitor company—Defendant Beacon—that now raises funds and does business in California using Vanguard's stolen property.

Beacon even touts these connections online, where it proudly lists its California investors and represents that it has "strong roots in Silicon Valley." *See* Ex. 3.[1] Indeed, Defendants concede that Beacon does business here, and operates an online digital platform accessible to California customers and investors. Such sustained and extensive connections to California, which form the basis for Vanguard's claims, are well beyond the minimum contacts necessary for jurisdiction.

[1] Unless otherwise indicated, references to Exhibits refer to exhibits to the concurrently-filed Declaration of Christopher T. Casamassima.

Against this backdrop, Defendants' plea for a discretionary dismissal on the ground of *forum non conveniens* rings hollow. They should not be heard to claim it would be "inconvenient" to litigate in California, having targeted and deceived a company headquartered here, breached fiduciary and contractual duties owed here, gathered and stole trade secrets and other proprietary information located here, traveled here for meetings, communicated on a regular basis with personnel here, and established a global business that now competes for market share here, raises capital from investors here, and does business here using property stolen from a local corporation. Defendants' *forum non conveniens* argument also fails because it rests on a "forum selection clause" that is an incomplete sentence fragment and, at best, merely "permissive." The clause in question says nothing to suggest it is "mandatory" and "exclusive." It therefore allows Vanguard to sue Defendants in England, Wales, ***or anywhere else they are subject to jurisdiction***. In any case, it would apply only to the claims based on the contract with that clause.

The other *forum non conveniens* factors weigh heavily against dismissal because litigating in London would be not be any more convenient or less expensive than litigating here. Traveling to and from court in London might be easier for Defendants, but it would not be easier for Vanguard. Defendants' argument also ignores recent advancements in videoconferencing, the widespread use of remote proceedings during the pandemic, and the fact that Robinson has no trouble traveling to California when it serves his and Beacon's interests to be here.

Robinson's effort to escape jurisdiction should be rejected for the additional reason that his Declaration, submitted under oath, contains numerous false statements—falsehoods that are so central to his motion and so patently untrue that he cannot credibly claim they were innocent mistakes. Contemporaneous emails and other documents demonstrate through his own prior statements that the most central assertions in his Declaration are knowingly false, as summarized in a chart attached to the Casamassima Declaration as Exhibit 1, including for example:

- Robinson's Declaration states that he "was never on the Board of Directors of … Vanguard … or any OTS entity," (Robinson Decl. ¶ 29), yet his own emails show that he joined the OTS/Vanguard Board[2] in December 2017; insisted on being paid a "***Board Director fee***" equal to that paid "other Directors"; emailed Vanguard's owner again to say he "remain[s] committed to helping you with Vanguard by ***remaining on the Board*** … [to] help shape the digital strategy"; and invoiced Vanguard's owner for payment of his Board fee.
- Robinson's Declaration states that he "did not provide any consulting services to Vanguard or to any entity other than ManCap," (Robinson Decl. ¶ 24), yet he agreed in writing to provide such services to OTS/Vanguard, provided such services (albeit fraudulently) for many months, and then invoiced Vanguard's owners for that work.
- Robinson's Declaration states that his work for Vanguard's owners was focused exclusively on a technology company they created in India, (Robinson Decl. ¶ 19 (referring to a company called "JiffyShip")), yet the documents—including the agreement he signed—show that he was brought on board to lead the digital transformation of Vanguard (not JiffyShip), served on the Board of OTS/Vanguard (not JiffyShip), chaired the Digital Steering Committee of the Board of OTS/Vanguard (not JiffyShip), and consulted with the officers and directors of OTS/Vanguard (not JiffyShip).

These and other false statements in Robinson's Declaration should not be credited and, in any case, cannot alter or erase the multitude of contacts that Defendants have with this forum. Indeed, even if the conclusive evidence of the formal relationships Robinson had with Vanguard and the OTS/Vanguard Board

[2] "OTS" refers to the holding company, OTS Topco Limited, which is the indirect corporate owner of Vanguard, the operating company that is the Mansour's wholly-owned shipping and logistics business. OTS and Vanguard share a board, *i.e.*, the "OTS/Vanguard Board."

were completely ignored—which they should not be—Defendants still targeted, defrauded, stole from, breached duties and obligations to, and otherwise harmed Vanguard here in this district. Robinson's implausible effort to recast his conduct as potentially damaging only the Mansours and their other companies—and not Vanguard—is as futile as it is dishonest. It does not change his or Beacon's very purposeful contacts with California. It is beyond any dispute that Robinson still worked extensively and directly with Vanguard, traveled to Vanguard's headquarters here, met with Vanguard's leadership here, carried on regular communications with Vanguard's team here, and obtained information located here. Moreover, he and Beacon have raised funds in California, courted investors and customers in California, and continue to do business here unlawfully with the information stolen from Vanguard. Under these circumstances, there is no serious basis to contest personal jurisdiction or argue for dismissal on grounds of inconvenience. The Motion should be denied.

## SUMMARY OF ALLEGATIONS

### I. THE PARTIES

#### A. Vanguard

Vanguard is a California corporation, with its headquarters and principal place of business in Long Beach, California. Compl. ¶ 16. The Mansour family owns Vanguard as part of The Mansour Group, which is a family-owned conglomerate with 60,000 employees, a presence in more than 100 countries, and successful business across a number of sectors. *See id.* ¶ 4; Declaration of Graham Cousins ("Cousins Decl.") ¶ 4. Vanguard is the Mansour Group's business in the shipping and logistics sector. Cousins Decl. ¶ 5. For several decades, Vanguard has been an industry leader in logistics, freight consolidation, and shipping services. *See* Compl. ¶ 2. Vanguard is owned through OTS Topco Ltd. ("OTS"), with which Vanguard shares a Board. Cousins Decl. ¶ 4. OTS is a holding company with no business or operations of its own. *Id.* ¶ 6. The names "OTS" and "Vanguard" are sometimes

used interchangeably. *Id.* ¶ 7. For example, Robinson refers to Vanguard's headquarters as the "OTS offices in Long Beach, CA," and refers interchangeably to Vanguard and OTS when discussing the consulting work he did for OTS/Vanguard. *See* Ex. 7.

**B. Beacon**

Beacon was incorporated in the United Kingdom on November 7, 2018, while Robinson was still working for OTS/Vanguard. Compl. ¶ 17. Beacon describes itself as aspiring to be "a global leader in logistics." *Id.* ¶ 45. Beacon has directors and investors in the United States, and has attempted to register patents and/or trademarks with the U.S. Patent and Trademark Office. Compl. ¶ 17. Beacon does business in California. *See* Robinson Decl. ¶ 60.

**C. Robinson**

Fraser Robinson is a citizen of the United States and the United Kingdom. Robinson Decl. ¶¶ 2-3; Compl. ¶ 18. Robinson went to college in the United States and worked in New York and California for five years. Robinson Decl. ¶¶ 3-5. He has traveled to California numerous times—including to this district—for work and pleasure. *Id.* ¶ 8. In 2018, he traveled to Vanguard's headquarters in Long Beach, where he met with Vanguard officers, directors, and personnel. *Id.* ¶¶ 40-43.

Robinson is the CEO and Co-Founder of Beacon. Compl. ¶ 18; Robinson Decl. ¶ 8(f). He secretly founded Beacon while he was serving on the OTS/Vanguard Board and still under contract with Vanguard's owners. *See* Compl. ¶¶ 2-4, 7-13, 31-52; *see also* Compl Ex. 1 (December 4, 2017 NDA describing Robinson's obligations "regarding the strategy of OTS Topco Ltd . . . and its subsidiaries . . . Vanguard Logistics Services"). Robinson's Consulting Agreement explicitly states that he will provide consulting services to the "OTS Board" and "join OTS Board meetings and advise on all matters relating to the digital strategy

of OTS Vanguard," and that he will "work with ManCap, Vanguard, and JiffyShip[3] teams on development of the new digital freight forwarder . . . ." Compl. Ex. 2; *see also* Ex. 2 (December 14, 2017 email introducing Robinson as "an advisor" who "will certainly help . . . develop and execute our digital strategy for Vanguard Logistics"). Robinson took Vanguard's information and data using a digital account he created for Beacon. Compl. ¶ 13.

## II. DEFENDANTS' ROLE AT VANGUARD AND EXTENSIVE CONTACTS WITH CALIFORNIA

In late 2017, Robinson contacted the Mansour family, Vanguard's principals, expressly seeking a job, and quickly focused on the family's shipping and logistics business, Vanguard. *See* Compl. ¶¶ 3-4, 31. Robinson had previously been employed as an executive at Uber, where "Uber Freight" sparked his interest in "learn[ing] more about logistics and how goods move around the world." *Id.* ¶ 3; *see also* Ex. 18. Specifically, as reported by the logistics trade press, Robinson "spent time inside" a logistics and shipping company, to "find out more about how they operate" because he "felt like there were lots of 'blank pages' of opportunities to improve existing systems." *Id.* Robinson's target was Vanguard, and the "opportunity" was Beacon. There is a direct line from his desire to learn the logistics business, through the company where he "spent time" learning that business (Vanguard), to Beacon. Robinson used what he took from Vanguard to start Beacon. *Id.* It was his plan all along.

At the time, Vanguard was—and had been for several years—in the process of developing a state-of-the-art digital platform for its shipping and logistics business. Compl. ¶¶ 4-5. Robinson pitched himself to the Mansours as an expert in business development and marketing, and offered to help Vanguard launch and

[3] "JiffyShip" (or "Jiffy") was the project name for the digital transformation of Vanguard's shipping and logistics business. The Mansour family established a technology company in India—JiffyShip Cargo Technology Solutions Pvt. Ltd. (also known as "JiffyShip") to help develop the technology for Vanguard and the JiffyShip project. *See* Cousins Decl. ¶¶ 10-11.

market its digital platform. *Id.* ¶¶ 6-7. Vanguard's owners hired Robinson as a consultant for Vanguard's business and appointed him to the OTS/Vanguard Board. *Id.* ¶¶ 7, 31; *see also* Compl. Ex. 2 (Consulting Agreement); Ex. 8 (March 14, 2018 email from Robinson acknowledging role on OTS/Vanguard Board); Ex. 9 at 3 (Oct. 8, 2018 email from Robinson re "joining the board"); *Id.* at 1 (Nov. 15, 2018 email from Robinson noting that he "remain[s] committed to helping you with Vanguard by remaining on the Board").

Robinson's initial contacts were with the Mansours—Vanguard's owners—but as the contemporaneous documents make plain, Robinson was retained to "join OTS Board meetings and advise on all matters relating to the digital strategy of ***OTS/Vanguard***," not Man Capital, JiffyShip, or any other entity. Compl. Ex. 2 (Consulting Agreement) (emphasis added); *see also* Ex. 2. After joining the OTS/Vanguard Board, Robinson was named the Chairperson of its Digital Steering Committee. *See* Compl. ¶ 31; Ex. 5 (January 8, 2018 email naming Robinson "Chairperson" of the Digital Sub-committee). In his capacity as board member, he attended OTS/Vanguard Board meetings from December 2017 through most of 2018. *See* Ex. 7. And in his capacity as Chairperson of the Digital Steering Committee, he led regular committee meetings with other OTS/Vanguard board members who served on the committee. *Id.*; *see also* Cousins Decl. ¶ 9.

As a board member, consultant, advisor, and committee chairperson for OTS/Vanguard, Robinson provided regular advice, consulting services, and other work product directly to Vanguard and its directors and officers, and was provided sensitive information regarding Vanguard's business. *See, e.g.*, Ex. 12 (December 6, 2017 email from Malik to Robinson with information "***covering Vanguard's core business***") (emphasis added); Ex. 6 (February 14, 2018 email from Robinson to Vanguard CEO re Vanguard digital strategy); Ex. 13 (discussing Vanguard strategy); Ex. 14 (Robinson and Cousins discussing key events for Robinson's trip to

Vanguard); Ex. 2. These and other documents demonstrate the falsity of Robinson's statements to the contrary. *See* Robinson Decl. ¶¶ 19-20, 24, 29.

Robinson promised to help with Vanguard's digital transformation. Compl. ¶¶ 7, 31-32. He entered into an NDA and a consulting agreement, requiring him to serve the company's best interests and protect its confidential information. *See id.*; Compl., Exs. 1-2. Relying on these commitments, Vanguard and the Mansours provided Robinson with a vast amount of Vanguard's confidential information so that Robinson could serve on the Board, perform his consulting services, and help with Vanguard's digital transformation. *Id.* ¶¶ 31-37; *see also* Ex. 12. This proprietary information included plans and prototypes for the new technology, shipping and pricing data, analytics engines, research and development data, the company's finances, and other intellectual property and trade secrets. *See id.* ¶ 36.

Robinson also had extensive contacts with Vanguard's personnel and facilities here in California. *See id.* ¶¶ 8, 35-38. While working out of the Mansours' offices in London, he regularly emailed and communicated with Vanguard personnel here in California on a wide range of matters, including the details of their business and the implementation of their digital strategy. Robinson sent dozens of emails to Graham Cousins, Vanguard's Chief Strategy Officer, who is based in Long Beach and served on both the OTS/Vanguard Board and the Board's Digital Steering Committee, which Robinson chaired. *See, e.g.*, Exs. 6, 14, 22; *see also* Cousins Decl. ¶ 9. Robinson also traveled—at Vanguard's expense—to the company's headquarters in Long Beach, where he gathered more confidential information. *Id.* ¶ 38. Contrary to Robinson's assertions, *see* Robinson Decl. ¶¶ 8(e), 40-43, the purpose of the trip was to facilitate Robinson's work on the formulation and implementation of Vanguard's digital strategy. *See* Ex. 6. While in Long Beach, Robinson met with Vanguard directors and senior employees; toured its facilities; provided consulting services; and gained access to additional confidential, proprietary information and data. Compl. ¶ 38.

Robinson used this access to Vanguard's trade secrets, human capital, and infrastructure—much of which was located in Long Beach—to obtain and extract information that he used to create his own competitor company: Beacon. *See id.* ¶¶ 1, 9-13, 21, 43-44. And less than a year after he arrived on Vanguard's doorstep knowing nothing about the industry—and while his NDA and his non-compete, confidentiality, and fiduciary obligations were all still in effect—Robinson secretly incorporated Beacon. *Id.* ¶¶ 45-47. He did not tell Vanguard or its principals what he was doing, despite owing them contractual and fiduciary duties of candor and loyalty. To obtain funding and business for his new venture, Robinson marketed Beacon to various California-based investors, venture capitalists, and businesses. *See id.* ¶¶ 14, 46; Robinson Decl. ¶ 8(f).

Contrary to Robinson's self-serving Declaration, Beacon was established using the information Robinson obtained from Vanguard, and seeks to compete in the same digital shipping and logistics market in which Vanguard currently operates and in which Vanguard seeks to further develop its business. *See id.* ¶¶ 46-52; *see also* Ex. 1 at 7-8 (comparing Robinson's Declaration to contrary statements on Beacon's own website). Robinson's misappropriation of Vanguard's proprietary information and Beacon's ongoing exploitation of that information in direct competition with Vanguard have harmed Vanguard. *See id.* ¶ 49. Defendants reduced Vanguard's competitive advantage, delayed its implementation of its digital strategy, and cost it considerable time and money in the process. *Id.* ¶¶ 50-51.

Robinson would have the Court believe that Beacon's focus is only "the European market," *Id.* ¶ 60. Beacon, however, proudly touts the company's "***strong roots in Silicon Valley***," backing from California investors, and a "mission to become a global leader in logistics." Exs. 3, 16.

**<u>LEGAL STANDARD</u>**

In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only present facts sufficient to establish a prima facie case for

jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). To evaluate whether such a showing has been made, a court must take as true all uncontroverted allegations in the complaint, and any "conflict[s] between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "[S]elf-serving declarations are insufficient to overcome uncontested allegations [] and jurisdictional evidence" supporting jurisdiction. *Crorama, Inc. v. Dominguez*, 2020 WL 4919735, at *4 (C.D. Cal. July 6, 2020) *see also Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, 2013 12131744, at *5 (C.D. Cal. Aug. 13, 2013) (giving "relatively little weight" to statements in defendant's declaration due to "their self-serving nature."). Because Robinson's declaration is demonstrably false and contradicted by his own contemporaneous documents, *see* Ex. 1, the Motion should be denied.

## ARGUMENT

Defendants' Motion fails because (1) the court has personal jurisdiction over both Robinson and Beacon, and (2) the *forum non conveniens* factors weigh heavily against Defendants. Robinson has had extensive contacts with California, as detailed above and explained further below, and both Robinson and Beacon have "strong roots in" and ongoing contacts with California, where they continue to harm Vanguard by using information they stole from it to compete, unfairly and deceptively, for California business, customers, and investors. The doctrine of *forum non conveniens* is likewise not a basis for dismissal where, as here, defendants continue to travel to and do business in California and where the forum selection clause they cite is not mandatory or exclusive. Having purposefully directed their conduct at California and traveled here to benefit themselves, Defendants should not be heard to claim that it would be inconvenient for them to answer for their misconduct here. The Motion should be denied.

## I. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

This Court has personal jurisdiction over any non-resident defendant that has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend the traditional notions of fair play and substantial justice.'" *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002); *see also* Cal. Civ. Proc. Code § 410.10. In the Ninth Circuit, courts apply a three-prong test to evaluate the exercise of specific personal jurisdiction over out-of-state defendants: (i) "the defendant must purposefully avail himself of the privilege of conducting activities in the forum thereby invoking the benefits and protections of its laws"; (ii) "the claim must be one which arises out of or results from the defendant's forum-related activities"; and (iii) "the exercise of jurisdiction over the defendant must be reasonable." *Schwarzenegger*, 374 F.3d at 802; *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017). Each of these requirements is easily met here.

### A. Defendants Purposefully Directed Their Conduct at California

The first prong of this jurisdictional test—"purposeful availment"—is satisfied upon a showing that the defendant's conduct was purposefully directed at the forum. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006).[4]

---

[4] Purposeful availment and purposeful direction, "though often clustered together under a shared umbrella, are, in fact, two distinct concepts." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Courts apply the purposeful availment framework in connection to contract claims, and the purposeful direction analysis to tort claims. *See Schwarzenegger*, 374 F.3d at 802. Here, though both contract and tort claims are present, the purposeful direction test should apply because the Complaint's focus is on Defendants' alleged misappropriation of Vanguard's trade secrets. *See, e.g.*, *Language Line Servs., Inc. v. Language Servs. Assoc., LLC*, 2010 WL 5115671, at *3 (N.D. Cal. Dec. 9, 2010) (applying purposeful direction analysis where "focus of [the complaint] is on Defendants' alleged trade secret misappropriation") (citations omitted). Nevertheless, because Robinson also personally availed himself of this forum—by, among other things, contracting to work for a company headquartered here, and

To assess whether a defendant purposefully directed his conduct at the forum, courts apply the "effects" test derived from *Calder v. Jones*, 465 U.S. 783, 787-89 (1984), which requires that (1) the defendant must have "committed an intentional act," (2) which was "expressly aimed at the forum state," (3) "causing harm that that defendant knows is likely to be suffered in the forum state." *Axiom Foods*, 874 F.3d at 1068 (quoting *Mavrix Photo, Inc. v. Brand Tecs., Inc.*, 647 1218, 1223 (9th Cir. 2011)). The test evaluates whether "the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).

This test has been met for both Defendants. Robinson served on the shared Board of OTS and Vanguard, a California company. Robinson contracted to perform work for the benefit of Vanguard and he performed some of that work at Vanguard's Long Beach headquarters. Robinson also targeted and stole confidential information, trade secrets, and other proprietary information from Vanguard here in California. Robinson traveled again to California, where he and Beacon made unlawful use of the information they stole from Vanguard as part of their unfair and deceptive business practices to solicit investments and business for Beacon, so that Beacon could grow and compete with Vanguard here and around the world. These alleged facts show far more than the mere "minimum contacts" required for personal jurisdiction. *See Dole Food*, 303 F.3d at 1110. Indeed, they show the type of "substantial and continuing relationship" with a local corporation, which the Supreme Court has held is sufficient to establish personal jurisdiction. *See Burger King*, 471 U.S. 462, 487 (1985).

Defendants cite *Walden v. Fiore* for the proposition that their contacts here were merely "random, fortuitous and attenuated," *see* Mot. at 13-16 (citing 571 U.S. 277, 286 (2014)), but that case actually supports the exercise of jurisdiction here.

---

physically traveling here to do business both on behalf of Vanguard and Beacon—jurisdiction is appropriate under either the availment or direction framework.

There, Nevada residents brought an action in Nevada against a Georgia law enforcement officer for alleged civil rights violations that occurred entirely in Georgia. *See Walden*, 571 U.S. at 279-81. Reaffirming the *Calder* "effects" test, the Supreme Court held that jurisdiction was lacking because the Georgia law enforcement officer in that case had "no jurisdictionally relevant contacts with Nevada." *Id.* at 289. It was not enough that the officer knew the plaintiffs were from Nevada. *Id.* Here, Defendants' contacts with California go far beyond merely knowing that Vanguard is from here. Robinson formed a substantial relationship with Vanguard, served on its Board, chaired one of its Board committees, traveled to its California headquarters, held meetings in California, maintained regular email and telephone communications, gathered and took information from the corporate headquarters, and used the secrets and property he took to start Beacon, which now does business here. As if that were not enough, Defendants have since returned to California to market to investors and customers here, using the very same property they stole from the California corporation they targeted.

**1. Defendants Committed Intentional Acts**

An intentional act is one committed with the "intent to perform an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806. This factor of the effects test considers only the "external manifestation of the actor's will," not the results of such acts or whether those results were intended. *Id.*

As the Complaint alleges, Robinson intentionally (i) entered into contractual and fiduciary relationships with Vanguard and its principals; (ii) traveled to California to meet with Vanguard's personnel and customers; (iii) stole trade secrets and other property belonging to Vanguard; and (iv) used the misappropriated property to incorporate Beacon and compete with Vanguard in California. *See generally* Compl. These facts are sufficient to satisfy the intentional act prong of the effects test. *See Schwarzenegger*, 374 F.3d at 806.

### 2. Defendants Expressly Aimed Their Conduct at Vanguard, Which Is Incorporated in California and Has Its Principal Place of Business in Long Beach

The express-aiming prong of the effects test requires a nexus between a defendant's conduct and the forum state, even if such conduct did not take place in the forum state. *See, e.g., Axiom Foods*, 874 F.3d at 1069-71; *Walden*, 571 U.S. at 286. Here, Defendants' conduct had a clear nexus with the forum state, either because it took place here or was directed at Vanguard, Vanguard's personnel, Vanguard's property, and Vanguard's business, which are located here.

Robinson worked for and on behalf of Vanguard, served on its Board, chaired its Digital Steering Committee, provided consulting services to its leadership, and purported to be helping with its digital transformation for roughly a year. *See supra* at 7-9. He traveled to California to perform his work for Vanguard, communicated regularly by email and telephone with Vanguard personnel from whom he solicited confidential information, targeted and took Vanguard's information, and competed with and otherwise harmed Vanguard here in California. *Id.* Robinson claims he was working ***only*** for London-based owners of Vanguard, and not for Vanguard, *see* Robinson Decl. ¶¶ 23-24, but his own documents belie his story. *See generally* Ex. 1. As the documentary record makes clear, Robinson's work for Vanguard's owners was in service to Vanguard, which explains why at the time of his trip to Long Beach he was on the OTS/Vanguard Board, chairing the Digital Steering Committee of the OTS/Vanguard Board, and advising and consulting with Vanguard leadership pursuant to his contractual and fiduciary obligations to the company. He traveled to Vanguard's headquarters in Long Beach and regularly communicated with Vanguard personnel to perform these various functions for the company and its owners. *See supra* at 7-9.

Beacon likewise aimed its relevant conduct at California. From the time that Robinson began creating and leading Beacon, his actions were attributable to it. *See, e.g., Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001) ("[A]

corporation acts only through its directors, officers, and agents"). And Beacon itself engaged in fraud, unfair and deceptive business practices, and theft of trade secrets by taking Vanguard's trade secrets and proprietary information and using it to market to investors and customers here. Beacon proudly declares that "Beacon is a young tech startup . . .with strong roots in Silicon Valley." *See* Ex. 3. Robinson's solicitation of investors in California to help fund his scheme to steal from Vanguard to start Beacon also supports the conclusion that Defendants expressly aimed their tortious conduct at this forum. *See Walden*, 571 U.S. at 285 ("[P]hysical entry into the State . . . is certainly a relevant contact."). Indeed, the Complaint alleges Defendants misappropriated Vanguard's trade secrets and other property, located in California, for purposes of competing with Vanguard in California. Such allegations are in and of themselves sufficient to establish express aiming. *See, e.g.*, *DEX Sys., Inc. v. Deutsche Post AG*, 727 Fed. Appx. 276, 277 (9th Cir. 2018) (holding the defendant's accessing of plaintiff's computer servers in California were sufficient for personal jurisdiction); *Enertrode, Inc. v. Gen. Capacitor Co. Ltd.*, 2016 WL 7475611, at *4 (N.D. Cal. Dec. 29, 2016) (holding alleged trade secret misappropriation in California sufficient to satisfy express aiming test); *Fluke Electronics*, 2013 WL 566959, at *6 (W.D. Wash. Feb. 13, 2013) (finding purposeful direction where defendants "used their former employment" to "access that company's trade secrets and then use that information to compete with the same [] business.").

It is beside the point that Robinson was in London when he performed certain work, *see* Mot. at 14-15, because at least some of that work was also expressly aimed at Vanguard and Vanguard officers and directors in California. For example, Robinson routinely communicated by email and telephone with Vanguard personnel, including most frequently Graham Cousins, Vanguard's Chief Strategy Officer, in Long Beach. *See, e.g.*, Exs. 6, 14, 22; Cousins Decl. ¶ 9. The Ninth Circuit, interpreting *Walden*, has held repeatedly that conduct can be expressly aimed at a

forum even if it doesn't physically take place within that forum. *See Picot*, 780 F.3d at 1212; *DEX*, 727 Fed. Appx. at 277. That Robinson actually came here, on Vanguard's behalf, and used that trip to further his scheme to learn the business and steal Vanguard's trade secrets in the process, is an additional contact demonstrating that Robinson's conduct was purposefully aimed at this jurisdiction. *See Walden*, 571 U.S. at 285 ("physical entry into the State . . . is certainly a relevant contact"). In traveling here, serving on the Board, holding meetings, and advising the company over an extended period, Robinson did far more than necessary to establish the kind of relationship that can give rise to jurisdiction. *See, e.g.*, *Burger King*, 471 U.S. at 476; *Picot*, 780 F.3d at 1212.

The Complaint alleges that Robinson intentionally sought out Vanguard to obtain the data, trade secrets, and other proprietary information he needed to create and run Beacon. Compl. ¶¶ 3-4, 9-13, 21, 43-44. Courts have held allegations of data theft from servers located in the forum state sufficient to support personal jurisdiction over out-of-state defendants even where such defendants were never physically present in the forum nor had any other contacts with forum residents. *See DEX*, 727 Fed. Appx. at 277; *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730-31 (2d Cir. 2012). Here, the contacts with California are far less "random, fortuitous, or attenuated" than those cases; Robinson had an extensive, ongoing relationship with a California company, on whose Board he sat, whose Board committee he chaired, whose personnel he advised, whose headquarters he visited, and whose property he stole and used to start a competitor company that now unfairly competes with Vanguard in California and around the world using the property and information stolen from Vanguard. *See Burger King*, 471 U.S. at 487. These allegations are more than sufficient to show that Defendants expressly aimed their tortious conduct at California. *Axiom Foods*, 874 F.3d at 1069-71; *Walden*, 571 U.S. at 286.

**3. Defendants Knowingly Caused Harm in California**

The Complaint alleges that Robinson hatched and executed a scheme where

he undertook (and then breached) fiduciary and contractual obligations to Vanguard in order to gain access to, and ultimately steal, its know-how and invaluable industry knowledge—and all so that he could start his own company. *See* Compl. ¶¶ 1, 12-15, 49-52. As direct result of this theft, and utilizing the proprietary information he stole, Robinson started Beacon, which competes directly with Vanguard in the same market in California. *See id.* ¶¶ 47-52; Ex. 19 (Robinson reciting his goal is to "disrupt" the industry.); Ex. 18 (confirming Robinson "spent time inside logistics companies to find out more about how they operate" in its goal to become "a leader in logistics."). There is no question, therefore, that Defendants are alleged to have knowingly caused harm in California. *See, e.g., Dole Food*, 303 F.3d at 1114 (holding California-based company "suffered jurisdictionally sufficient economic harm in California" where foreign employees allegedly defrauded company); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) (a "corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."); *see also Brayton Purcell*, 606 F.3d at 1128 (holding that "harm to [] business reputation and goodwill, and decreased business and profits" foreseeably occurred where the business was located). Accordingly, this prong of the effects test is satisfied. *See, e.g., Mee Indus., Inc. v. Adamson*, 2018 WL 6136813, at *4 (C.D. Cal. Jul. 27, 2018) (holding alleged misappropriation of a California corporation's trade secrets was sufficient to establish prima facie case for jurisdiction). The Motion does not contend otherwise.

### B. Vanguard's Claims Arise Out of Defendants' Forum-Related Actions

Vanguard's claims arise out of Defendants' California-related actions because those actions were aimed at Vanguard, violated obligations to Vanguard, and caused harm to Vanguard. *See, e.g., Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). A "lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *In re W. States Wholesale*

*Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013). Here, Vanguard's lawsuit arises from conduct that occurred in or was directed at this forum, including Defendants' theft of Vanguard's trade secrets and other proprietary information located here, violations of contractual and fiduciary duties owed here, and misuse of stolen property to do business here harm Vanguard's business. *See, e.g.*, *Enertrode*, 2016 WL 7475611, at *5 (N.D. Cal. Dec. 29, 2016) (finding "alleged downloading and copying of Plaintiff's trade secrets . . . use of Plaintiff's trade secrets in direct competition with Plaintiff, and disclosure of Plaintiff's trade secrets to third parties" sufficiently related to Plaintiff's claims).

Defendants' reliance on *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773 (2017) is misplaced; that case supports the exercise of jurisdiction here. Consistent with *Wholesale Natural Gas* and other well-settled precedent, *Bristol-Myers* simply reiterates that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." 137 S. Ct. 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). There, although the Court affirmed the dismissal of nonresidents' claims, it expressly distinguished the claims of California residents who suffered harm in the forum that gave rise to jurisdiction there. *Id.* at 1781-82 ("The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State."). Here, Vanguard is a California resident, who has alleged harm in California. That harm is alleged to have been caused by Defendants, and arises directly out of their contacts with both Vanguard and California. *See Enertrode*, 2016 WL 7475611, at *5.

### C. The Exercise of Jurisdiction Comports with Fair Play and Substantial Justice

Given that the first two factors of the specific jurisdiction test have been met, the burden is on Defendants to show that jurisdiction would violate the principles of fair play and substantial justice. *Schwarzenegger*, 374 F.3d at 802; *see also*

*Enertrode*, 2016 WL 7475611, at *6 ("In the Ninth Circuit, courts 'emphasize the heavy burden on both domestic ***and foreign*** defendants in proving a 'compelling case' of unreasonableness to defeat jurisdiction.") (quoting *Dole Food*, 303 F.3d at 1117). Courts weigh the following seven factors to determine whether the exercise of jurisdiction comports with fair play and substantial justice:

> (1) The extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 F.3d at 1114.

Here, Defendants have failed to meet their burden. The first factor supports the exercise of jurisdiction because the Ninth Circuit has held that the satisfaction of the purposeful direction test weighs in favor of exercising jurisdiction. *See Enertrode*, 2016 WL 7475611, at *6; *see also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). And as shown above, Vanguard has demonstrated purposeful direction: Robinson undertook contractual and fiduciary obligations to Vanguard, a California company; traveled to California to meet with Vanguard; breached his obligations to Vanguard by stealing its trade secrets and other proprietary information; and then further harmed Vanguard by using information he stole from it to create Beacon for the purposes of competing with Vanguard.

The remaining factors evaluating California's interest in the action, and the feasibility and efficiency of proceeding with the case here, also favor the exercise of jurisdiction over the Defendants. "California has a strong interest in applying its trade secrets laws to protect against misappropriation of trade secrets." *M/A-COM Tech. Solutions, Inc. v. Litrinium, Inc.*, 2019 WL 6655274, at *7 (C.D. Cal. Sept. 23, 2019). Similarly, Defendants have not shown any conflict between California and the United Kingdom and, in any event, any such conflict "would have been

outweighed by California's strong interest in providing a forum for its residents who claim injury due to the conduct of a person who resides elsewhere." *Carmel v. Mizuho Bank, Ltd.*, 2019 WL 10186488, at *11 (C.D. Cal. Nov. 14, 2019). Accordingly, the third, fourth, and sixth factors militate in favor of jurisdiction.

Defendants' argument that it would be unduly burdensome to defend the action here is inconsistent with their actions. Robinson is a U.S. citizen who has had no difficulty traveling to California in the recent past to (1) come to Vanguard's headquarters here to mine it for confidential information and steal its trade secrets; (2) market Beacon to California investors and customers, claiming it has "strong roots in Silicon Valley"; and (3) work and vacation when it suits his interests to do so. Regardless, "[c]oncerns over exerting jurisdiction over international defendants have diminished as progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome." *AirWair Int'l ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1239 (N.D. Cal. 2014) (internal quotation marks and citations omitted). This is particularly true with the dramatic improvements in videoconferencing technology necessitated by the pandemic, something Robinson and Beacon have touted in the press in relation to their rapidly expanding "global business." *See* Ex. 16 (June 1, 2020 press release noting that "digitalisation [is] accelerating globally as a result of COVID-19"). Similarly, the existence of an alternative forum in England is outweighed by the countervailing burdens on Vanguard having to litigate there, as well as the inefficiency of starting a new action there where one already exists here. Accordingly, Defendants have not met their burden with respect to the second, fifth, or seventh factors.

Defendants have failed to present a "compelling case" that the exercise of personal jurisdiction over them in California would be unreasonable. *Schwarzenegger*, 374 F.3d at 802.

## II. ALTERNATIVELY, JURISDICTIONAL DISCOVERY IS APPROPRIATE

If "a more satisfactory showing of the facts," is deemed necessary, jurisdictional discovery would be appropriate. *Boschetto v. Hansing*, 539 F.3d at 1020; *see also Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Ninth Circuit has made clear that jurisdictional discovery is required where it "might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (holding district court abused its discretion by denying jurisdictional discovery where "discovery . . . might well demonstrate facts sufficient to constitute a basis for jurisdiction"); *see also Laub*, 342 F.3d at 1093; *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989). Because a "colorable basis" for jurisdiction exists, *see, e.g., Ross v. Abbott Vascular Inc.*, 2020 WL 4934487, at *7 (N.D. Cal. Apr. 6, 2020); *HaloSongs, Inc. v. Sheeran*, 2017 WL 5198248, at *4 (C.D. Cal. Jan. 13, 2017), prior to any dismissal Vanguard should be permitted jurisdictional discovery to further establish Defendants' contacts with this district.

## III. VENUE IS PROPER IN THIS COURT

Defendants fail to provide any explanation or support for their passing assertion that venue is improper here. *See* ECF No. 17-1. Suffice it to say that venue is proper here, both because this is where the non-resident Defendants directed their misconduct and, in any case, the venue statute explicitly provides that defendants "not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c); *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 711 (1972) ("[S]uits against aliens are outside the scope of all the venue laws.").

## IV. *FORUM NON CONVENIENS* IS NOT A BASIS FOR DISMISSAL

A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal. *See Lueck v. Sundstrand*

*Corp.*, 236 F.3d 1137, 1142-43 (9th Cir. 2001). The burden is on the moving party to make "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Updateme Inc. v. Axel Springer SE*, 2017 WL 5665669, at *4 (N.D. Cal. Nov. 27, 2017) (citing *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)); *see also Dole Food*, 303 F.3d at 1118 ("The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country."). "*[F]orum non conveniens* is an exceptional tool to be employed sparingly" it is not "a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Ravelo Monegro*, 211 F.3d at 514. And "[w]hen a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient." *Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1227 (9th Cir. 2011); *see also Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1112 (9th Cir. 2020) ("A plaintiff's choice of forum—particularly a plaintiff's 'home forum'—is entitled to considerable deference."). Here, Defendants have not made the requisite "clear showing" that the "exceptional tool" of *forum non conveniens* is appropriate here.

### A. The "Forum Selection Clause" Provides No Support

Contrary to Defendants' unfounded assertion, there was no agreement "that the courts of England and Wales would have ***exclusive jurisdiction*** to resolve any dispute related to the [NDA]." Mot. at 3 (emphasis added). The relevant clause in the NDA is incomplete and unclear. It consists of a sentence fragment stating that "each party irrevocably agrees that the courts of England and Wales [sic]." Compl. Ex. 1. The clause is cut off at the end and there is no other agreement on the subject. Even assuming that the clause establishes jurisdiction in the courts of England and Wales, there is nothing to suggest that the clause is both mandatory and exclusive, which is what Defendants falsely contend. In the absence of "mandatory" and "exclusive" language (*e.g.*, stating that the parties "***shall***" bring litigation "***only***" in

the courts of England and Wales), the clause is at best considered "permissive," meaning that it would allow for a lawsuit to be brought in the courts of England, Wales, or anywhere else with jurisdiction. The NDA, therefore, does not support dismissal, as it clearly allows Vanguard to bring litigation in California. *Com Sys., Inc. v. Nahmad*, 924 F.2d 1062 (9th Cir. 1991) ("[W]hen only jurisdiction is specified[,] the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.") (internal quotation omitted); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir.1987) (clause that "[t]he courts of California, County of Orange, shall have jurisdiction over the parties" did not provide for exclusive jurisdiction). Under these circumstances, a plaintiff is entitled to choose its forum and Vanguard's choice of its home forum is entitled to considerable deference. *See Glob. Commodities*, 972 F.3d at 1112.

**B. The Private Interest Factors Favor This District**

Defendants fail to show that the private interest factors weigh in favor of dismissal. First, Defendants are mistaken that England would be "most convenient for ***all*** parties involved." Mot. at 24 (emphasis in original). Vanguard chose to bring this litigation here in its home forum, in part because this is where the harm was suffered, where the courts are most familiar with the California law that governs the majority of the claims, and where Vanguard witnesses, documents, and other information are located. For example, Vanguard's Chief Strategy Officer Graham Cousins—with whom Robinson had countless relevant written and oral communications—resides in this district. Compl. ¶ 35; *see also* Mot. at 20 (conceding Cousins resides here). Cousins and other Vanguard employees with whom Robinson met in this forum have information about what Robinson did in this forum, how he breached his obligations here, what he took from here, and how he and Beacon caused harm here. Defendants argue that they "would be severely prejudiced, not least of which by their inability to compel attendance at trial of the

many key, foreign witnesses," but they have failed to identify ***any*** unwilling or potentially unwilling witnesses abroad. *Id*. Moreover, their argument ignores any unwilling witnesses ***in this district***. The Complaint alleges that "Robinson contacted one or more of Vanguard's customers, suppliers, shippers, brokers, warehouse operators, or others, and made false or misleading statements to them concerning Vanguard's business." Compl. ¶ 138. These witnesses may need to be compelled, which would not be possible if this case had to be brought instead in England. Vanguard would suffer severe prejudice if this case were dismissed on this ground.

Fourth, Defendants represent that the cost of bringing witnesses to trial would be "significantly less" in England. While that may be true for witnesses located there, it certainly is not true for witnesses located here. Moreover, Robinson admits that he has recently traveled to California multiple times—including to this district—for both work and pleasure. *Id*. ¶ 8. Given Robinson's U.S. citizenship, his extensive ties to the United States, and his recent travels to California on trips relating specifically to the allegations in this case, he can hardly claim inconvenience in having to travel to (or appear remotely by videoconference before) this Court to answer for his misconduct here. The private interest factors weigh heavily against dismissal.

**C. The Public Interest Factors Favor This District**

The public interest factors cut strongly against Defendants and in favor of this district. Defendants' argument rests on mistaken premises. First, Defendants suggest that this entire dispute will be governed by the laws of England and Wales. Mot. 25. That is incorrect. Vanguard asserts claims for intentional misrepresentation and fraud, misappropriation of trade secrets under federal and California law, intentional interference, and the UCL—all of which will be governed by the laws of the United States and/or California. This Court is familiar with such laws and presumably courts in England are not. Defendants next assert that California courts are "[a]leady overburdened," Mot. at 25, but this ignores that the

same may be true of courts in England and, in any case, it is not a basis to preclude Vanguard from initiating suit in its home jurisdiction.

Defendants last argument—*i.e.*, that California has a weak local interest—is so clearly wrong that it hardly warrants a response. California obviously has strong and compelling interests in the rule of law, international trade and commerce that affects the state, trade secret protections for corporations based in the state, fiduciary duties and contractual obligations owed to corporations based in the state, unfair and deceptive business practices in the state, and tortious misconduct directed at local corporations. Vanguard is a local corporation that is headquartered in this district and has employees in this district. And the causes of action here arise from contacts ***with this district*** and from harm suffered ***in this district.*** This case, therefore, is directly related to this forum, and this forum has a significant interest in this case.

For all of these reasons, Defendants have not—and cannot—meet their burden of showing that the private and public interest factors so strongly favor trial in England that a discretionary dismissal is warranted on the basis of inconvenience to the Defendants. *See Dole Food*, 303 F.3d at 1118 ("The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country.").

## CONCLUSION

For the foregoing reasons, the Motion should be denied. In the alternative, at a minimum, the Court should grant leave for Vanguard to conduct limited jurisdictional discovery.

Dated: February 23, 2021

Respectfully Submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

By: *<u>/s/ Christopher T. Casamassima</u>*
Christopher T. Casamassima

Thomas L. Strickland
David W. Bowker
Alix Pisani

*Attorneys for Plaintiff Vanguard Logistics Services (USA), Inc.*